# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JEREMIAH MITCHELL, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09cv00276 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff initially brought this case seeking judicial review, under the provisions of 42 U.S.C. § 405(g), of the Social Security Administration's decision to deny his application for Disabled Adult Child benefits – a subset of the Disability Insurance Benefits program.  The Court previously remanded the case for payment of benefits, and the Clerk of Court entered Judgment in Plaintiff's favor and against the Commissioner. (Doc. #s 10, 12, 13).

The case is presently before the Court on Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (EAJA) (Doc. #14), the Commissioner's Response (Doc. #15), and the record as a whole.  Plaintiff specifically seeks an award of attorney

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

fees in the amount of $3,614.84, for 21.25 hours of work before the Court at an hourly rate of $170.11. (Doc. #14). The Commissioner contends that an award of EAJA attorney fees is not warranted in this case. (Doc. #15). If Plaintiff is entitled to attorney fees, the Commissioner argues such an award should not be paid directly to Plaintiff's counsel. (Doc. #15 at 6).

The EAJA provides attorney fees to a party who prevails in a civil action against the United States "when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)). In the present case, Plaintiff became the prevailing party when he obtained a reversal and remand for payment of benefits. *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993). The parties' dispute thus focuses on whether the Government's position in support of the ALJ's decision was substantially justified. *See, e.g., Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541 (1988)

> A position is substantially justified when it is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541. Stated otherwise, a position is substantially justified when it has a "reasonable basis both in law and fact." *Id*. The fact that . . . the Commissioner's position was unsupported by substantial evidence does not foreclose the possibility that the position was substantially justified. *See id*. at 569, 108 S.Ct. 2541; *Jankovich v. Bowen*, 868 F.2d 867, 870 (6th Cir. 1989). Indeed, "Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case. . . .'" *Scarborough* [*v. Principi*, 541 U.S. 401, 415, 124 S.Ct. 1856, 1866 (2004)] (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003)).

2

*Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004).  The Government bears the burden of establishing that its position was substantially justified.  *Scarborough*, 541 U.S. at 414-15, 124 S.Ct. at 1865-66.  In the present case, the Government argues its position was substantially justified because "[i]n finding that Plaintiff was not disabled, the ALJ provided sufficient reasons why he did not rely on the opinions of Dr. Rahman and Dr. Gibeau."  (Doc. #15).  In support, the Government also notes "[t]he ALJ explained that he reasonably gave these opinions little weight because they were not supported by any clinical data and were inconsistent with school records," and that "the ALJ did not rely on Dr. Rahman's opinion because his notes contain little information about Plaintiff's condition, and, do not even contain the results of a mental status examination." (*Id.* at 3). The Government argues that "[d]espite the Courts's conclusion for remanding this case, the ALJ's decision did not employ an improper methodology." (*Id.* at 5).  Nonetheless, the Government also notes that "[t]he ALJ did not connect all the dots in parts of his analysis and did not fully explain some of his findings."  (*Id.*).  Plaintiff argues "[t]he ALJ's decision was not only unsupported by substantial evidence, but was unreasonable." (Doc. #14 at 3).  Plaintiff further notes that "the ALJ placed little or no weight on the opinions of Plaintiff's treating psychiatrist, Dr. Rahman, or on the opinions of the one-time evaluating psychologist, Dr. Gibeau." (*Id.*).  In addition, Plaintiff contends "[t]he ALJ essentially took Plaintiff's testimony out of context and misinterpreted it to cast doubt on Dr. Rahman's opinions," and that "[t]hese were serious errors that make the ALJ's decision unreasonable." (Doc. #14 at 4).

Although, as the Government acknowledges, "[t]he ALJ did not connect all the dots in parts of his analysis and did not fully explain some of his findings," he failed to do much more as well. The ALJ's decision was not vacated simply because of issuing a decision which failed to connect "all the dots" or "fully explain some of his findings," but because it was inconsistent with Social Security Regulations, Rulings, and relevant case law. So much so, as the Plaintiff notes, this Court concluded "the evidence of disability is overwhelming or, at the very least, strong, while contrary evidence is weak," and determined remand for the payment of benefits to be proper. (Doc. #12 at 5). On numerous occasions the ALJ selected portions of the record which supported his non-disability decision and ignored, or overlooked, evidence consistent with the opinions of Plaintiff's treating psychiatrist, Dr. Rahman, or the one-time evaluating psychologist, Dr. Gibeau.

The Court previously explained:

> The ALJ "essentially follow[ed] the recommendations" of Dr. Schulz, who examined Plaintiff for the Ohio BDD, and Drs. Flynn and Hoyle, who reviewed the record at the Ohio BDD's request. (Tr. 26). The ALJ gave "considerable weight" to the opinions of these non-treating medical sources, finding their opinions "consistent for the most part with the clinical data and descriptive information about the claimant's level of function in typical activities." (Tr. 26).
>
> In contrast, the ALJ placed little or no weight on the opinions of Plaintiff's treating psychiatrist, Dr. Rahman, or on the opinions the one-time evaluating psychologist, Dr. Gibeau. (Tr. 24). The ALJ explained, " the opinions of those doctors [Drs. Rahman and [Gibeau] are given little weight as they are poorly supported by any consistent clinical data and are clearly inconsistent with school records, the more realistic report of Dr. Schulz, or even the claimant's own testimony." (Tr. 24). The ALJ also wrote:

4

"All-in-all, the evaluations by Dr. Gibeau and Dr. Rahman which suggest the claimant is incapable of any work due to serious emotional problems (depression and anxiety) are totally lacking in credibility as they are poorly supported clinically, and inconsistent with other substantial evidence, including this individual's own statements about his emotional health. Likewise, based on this record, it is found that he does not have a 'severe' impairment in the form of depression or anxiety disorder. Neither controlling nor deferential weight is accorded to the opinions of Dr. Gibeau and Dr. Rahman.

(Tr. 25). The ALJ later observed:

"Generally, the opinions of Dr. Schulz and the [Ohio] BDD reviewing psychologists are entitled to considerable weight as they are consistent for the most part with the clinical data and descriptive information about the claimant's level of function in typical activities. However, the moderate restrictions with respect to concentration, persistence, or pace, are found to be warranted in view of the history of developmental delays and academic problems (even if some of these problems have largely been a matter of his low motivation)."

(Tr. 26-27). The ALJ additionally wrote:

As already noted, the above restriction, moderate in nature, give the claimant a good deal of benefit of doubt and are quite generous in comparison to the basically not severe degree of impairment indicated by Dr. Schulz and the [Ohio] BDD reviewing psychologists (notwithstanding that the assessments of Dr. Schulz and the [Ohio] BDD reviewing psychologists are much more realistic than the grim but poorly supported opinions of Dr. Gibeau and Dr. Rahman."

(Tr. 28).

The ALJ fails to state what evidence in the record actually supports the findings of Dr. Schulz and that of the Ohio BDD reviewers, and he fails to even mention or give reasons for rejecting the objective clinical evidence – such as Plaintiff's school records, intelligence testing, achievement testing, and personality testing (as discussed further below) – that supported the findings and opinions provided by Plaintiff's treating specialist, Dr. Rahman, and by examining

5

psychologist, Dr. Gibeau. The ALJ's reasoning does not refer to specific evidence, instead referring to broad categories of evidence such as "school records" (Tr. 24) and making broad observations such his finding that Dr. Rahman's opinions were "poorly supported clinically" without discussing what led him to that conclusion. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how these reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (quoting in part *Wilson*, 378 F.3d at 544) (internal punctuation omitted). Indeed, "Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §404.1527 and 416.927. Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify discrepancies and to explain why it is the treating physician's opinion gets the short end of the stick." *Friend v. Commissioner of Soc. Sec.*, unpublished dec., 2010 WL 1725066 at *8 (6th Cir., April 4, 2008)(citing *Blakley*, 581 F.3d at 408)(other citation omitted).

"'In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.'"

*Hurst v. Secretary of HHS*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The Commissioner contends that the ALJ provided good reasons for not relying on the opinions of Dr. Rahman and Dr. Gibeau. The Commissioner reasons:

> "The ALJ explained that he reasonably gave these opinions little weight because they were not supported by any clinical data and were inconsistent with school records (Tr. 24). In addition, the ALJ did not rely on Dr. Rahman's opinion because his notes contain little information about Plaintiff's condition, and, in fact, do not even contain the results of a mental status examination (Tr. 24, 421-38). Where a physician's conclusion regarding a claimant's capacity contains no substantiating medical data or other evidence, the ALJ is not required to credit such opinions."

(Doc. #8 at 68). These contentions overlook the need for an ALJ to specify the

6

evidence that supported his assessment of the medical source opinions rather than rejecting those opinions by referring to broad categories of evidence. *See Hurst v. Secretary of HHS*, 753 F.2d at 519; *see also Friend*, 2010 WL 1725066 at *8; 20 C.F.R. §416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinions.").

In addition, the ALJ overlooked the similarity between Plaintiff's testimony and Dr. Rahman's opinions. The ALJ essentially took Plaintiff's testimony out of context and misinterpreted it to cast doubt on Dr. Rahman's opinions. He wrote:

> "Remarkably, the claimant's testimony raised a lot of doubts about the treatment relationship with Dr. Rahman. He testified that he could not identify any emotional problems. He said that he did not know why he was seeing Dr. Rahman or even who sent him to that psychiatrist. He was not even sure that he had seen this doctor even when the ALJ reminded him that his was a doctor with Indian ethnicity…."

(Tr. 24).

Rather than conflicting with Dr. Rahman's opinions, as the ALJ found, Plaintiff's testimony tends to confirm his cognitive and adaptive difficulties. Plaintiff testified that he did not know who sent him to Dr. Rahman or why he saw him and that his mother was "the one who knows all of it." (Tr. 477). Plaintiff explained that he saw many people and that he did not know which one was Dr. Rahman. (Tr. 478). ALJ Padilla asked Plaintiff about seeing an "Indian doctor by the name of Dr. Rahman." *Id*. Plaintiff answered that he did not know. *Id*. When asked by his attorney, Plaintiff stated that he was not sure what being an Indian doctor meant. (Tr. 485).

Plaintiff's lack of understanding about his treatment with Dr. Rahman was consistent with the clinical evidence in the record. For example, Dr. Gibeau – who performed numerous objective psychological tests on Plaintiff – found that his fund of information was poor and that a twenty-four point discrepancy between his Verbal and Performance IQ scores indicated "greatly uneven mental functioning." (Tr. 415). These findings, moreover, were consistent with testing done by Xenia Community Schools in 1997. *See* Tr. 110, 123.

In addition, Dr. Gibeau reported that Plaintiff's "long term verbal memory was significantly below average and he had great difficulty in the recall of names, dates, and events." (Tr. 416). Based on testing, Dr. Gibeau noted that Plaintiff's

7

"knowledge of verbal meanings was significantly below average and there should be problems in both his receptive and expressive communication…. Overall, his performance was indicative of better performance than verbal skills with problems in communication, reasoning, attention/concentration, recall of information, making decisions and forming new associations." *Id*. Dr. Gibeau reported that Plaintiff did not understand why he was being evaluated, and he did not understand what "sexual abuse" meant. (Tr. 412-13). Plaintiff's testimony during the ALJ's hearing similarly revealed that he did not understand the word "disability." (Tr. 474). An interviewer for the Ohio BDD noted that Plaintiff "clearly didn't understand everything that was asked and relied upon his mother to answer for him." (Tr. 147).

The results of the intelligence testing administered by Dr. Gibeau were consistent with school testing. This supports the indication in Plaintiff's testimony that he has significant, if not severe, cognitive deficiencies in understanding verbal communication. Dr. Gibeau, moreover, wrote that Plaintiff's performance on the intelligence testing was "indicative of better performance than verbal skills with problems in communication, reasoning, attention/concentration, recall of information, making decisions, and forming new associations." (Tr. 416). Achievement testing demonstrated that Plaintiff was in the developmentally handicapped range. *Id*. Questions on personality testing revealed:

> His clinical personality pattern indicates a long term depression, beliefs of inadequacy, feelings of worthlessness, and low self-esteem..... He exhibits a disregard for the rights of others and for society in general. He can show periods of being belligerent, intimidating and domineering in his behavior toward others…. He exhibits a pervasive pattern of negativistic attitudes and passive resistance to demands for adequate performance. He is likely to complain of being misunderstood and unappreciated by others. He may alternate between hostile defiance and contrition…. He is slow to make decisions without the advice and reassurance of others. He has difficulty doing things on his own because of a lack of selfconfidence….

(Tr. 417).

Returning to Dr. Schulz, the ALJ credited his opinions by observing that Dr. Schulz's assessment was supported by the clinical and objective evidence. Without any meaningful explanation as to why the ALJ believed Dr. Schulz's assessment deserved "considerable weight," his decision is unmoored from substantial supporting evidence.

8

To the extent the ALJ relied on the opinions of two non-examining, record-reviewing Ohio BDD medical sources (Drs. Flynn and Hoyle) as grounds for crediting Dr. Schulz's opinions, the ALJ's decision is not supported by substantial evidence. This is so because these non-treating medical sources reviewed the record and formed their opinions in April 2005 and September 2005, before the later-written reports and opinions of Drs. Rahman and Gibeau. *See Sherman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

Lastly, the ALJ also relied on Plaintiff's ability to engage in certain daily activities as another reason for rejecting Dr. Rahman's and Dr. Gibeau's opinions. The ALJ recognized that Plaintiff engaged in a wide range of leisure activities, including using a "computer, surfing the NET, playing video games, watching television and movies, socializing, riding a bike, and listening to music." *Id.* The ALJ additionally noted that Plaintiff's school records "actually suggest about average reading skill, notwithstanding his seemingly difficult time with academics." *Id.* The ALJ noted that poor motivation may be a large factor in Plaintiff's "apparently limited" academic skills. (Tr. 26). Yet in support of this, the ALJ repeatedly remarked throughout his decision, *see* Tr. 23, 24, 26, 28, that Plaintiff's school records indicated he could conform to authority and be well-behaved, citing to one remark in Plaintiff's March 2004 Individualized Education Plan. *See* Tr. 133. The ALJ ignored or overlooked that other information found in Plaintiff's Individual Education Plan was consistent with the opinions of Drs. Rahman and Gibeau.

When assessing Plaintiff's need for special education at age eighteen, the school evaluation team reported that he had "exhibited difficulty learning in a traditional school setting for most of his academic career." (Tr. 122). He had also "exhibited difficulties maintaining interpersonal relationships with peers and others throughout his academic career." *Id.* He "becomes angry, aggressive and obstinate when he becomes frustrated with tasks that are part of the daily routine such as attending school and participating appropriately." *Id.* In light of such evidence, the ALJ erred by picking and choosing portions of the record which supported his non-disability decision rather while ignoring or overlooking evidence consistent with the opinions of Drs. Rahman and Gibeau. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002). Moreover, the ALJ's failure to account for the evidence confirming the opinions of Drs. Rahman and Gibeau constituted the same type of error described in *Howard v. Commissioner of Soc.*

9

*Sec.*, 276 F.3d 235 (6th Cir. 2002):

> "[T]he ALJ's selective inclusion of only those portions of the report that cast Howard in a capable light suggests that he only considered part of the report in formulating his conclusion that Howard 'need[s] to perform work of a simple and relatively nonstressful nature.' As a result, we conclude that the RFC does not accurately describe Howard's abilities and that the ALJ's decision, which is based upon it, is not supported by substantial evidence.

276 F.3d at 240-41.

(Doc. #10 at 18-26).

The ALJ's selective inclusion of the record in this case is clear. As previously noted, the ALJ overlooked or ignored numerous portions of the record which were consistent with the opinions of Dr. Rahman and Dr. Gibeau, yet selected portions of the record supporting his non-disability decision. Such an error deprives the Government's defense of the ALJ's decision of a reasonable basis in fact and law. The Commissioner, therefore, has not met his burden of establishing that his support for the ALJ's decision was substantially justified or that an EAJA award to Plaintiff will be unjust. *Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge's denial of benefits is without substantial justification.").

Accordingly, Plaintiff is entitled to an EAJA award.

An additional issue remains that must be addressed by this Court: Plaintiff's counsel seeks to increase the $125 hourly rate set by Congress in 1996 to $170.77 per

hour for work performed. Counsel states that "[a]ttached is information from the United States Department of Labor, showing the increase in the cost of living in this area since March 1996, to make the hourly rate of $170.11 per hour." (Doc. #14 at 4). Attached to Plaintiff's Motion is also a list of the services Plaintiff's counsel performed in this case, adding up to 21.25 hours of attorney work. (Doc. #14-1 at 1).

"In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support the requested increase. Plaintiffs must 'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Bryant*, 578 F.3d at 450 (internal citation omitted). "In accordance with the Sixth Circuit decision in *Bryant*, the submission of the Consumer Price Index, standing alone, is insufficient to satisfy the burden of proving that the higher hourly rate requested by counsel is justified." *Douglas v. Astrue, Commissioner of Social Sec.*, 2012 WL 931100 at *2 (S.D. Ohio, March 19, 2012)(Rice, D.J.). Counsel has offered no affidavit or other evidence showing that the requested rate is "'in line with those prevailing in the community for similar services offered by lawyers of reasonably comparable skill, experience, and reputation . . . .'" *Id.* (quoting *Bryant*, 578 F.3d at 450). Plaintiff's counsel, therefore, has not met her burden of showing that the increase she requested in the statutory cap of $125 per hour is warranted. *See id*.

Accordingly, Plaintiff is entitled to an EAJA award of attorney fees calculated as

follows: 21.25 (hours of attorney work) x $125 = $2,656.25.

Plaintiff's counsel requests payment of an EAJA award directly to her, and has attached an assignment of fees from Plaintiff. (Doc. #14-1 at 2). Defendant argues payment of any fees awarded should not be made directly to Plaintiff's counsel, and that "the government will evaluate the propriety of directing payment to the attorney pursuant to an assignment." (Doc. #15 at 7). Defendant's opposition is based on *Ratliff v. Astrue*, __ U.S. __, 130 S.Ct. 2521, 2524 (2010), in which the Court held that a "§2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." In so holding, the Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney. __ U.S. at __, 130 S.Ct. at 2528-29. The Court further noted that, based on the record before it, "the Government has since continued the direct payment practice only in cases where the plaintiff does not owe a debt to the [G]overnment and assigns the right to receive the fees to the attorney." *Id.* at 2529 (internal quotation marks omitted).

Defendant has not currently placed into the record any evidence tending to show that Plaintiff, in fact, owes a pre-existing debt to the United States that might cause his EAJA award to be subject to an offset under *Ratliff*. As the Defendant effectively acknowledges that it does not know whether Plaintiff owes a pre-existing debt to the federal government at this time, no ripe *Ratliff* issue currently exists. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its

knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award. 130 S.Ct. at 2424-25. In the present case, the Commissioner appears to lack such knowledge, and accordingly, there is no ground for the Commissioner to avoid or delay honoring Plaintiff's assignment of his EAJA fees to counsel. *Cf. Ratliff*, __ U.S. at __, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.") (Sotomayer, J., concurring).

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (Doc. #14) be GRANTED, in part, to the extent Plaintiff is entitled to an EAJA award in the total amount of $2,656.25. Plaintiff's Motion for an EAJA award totaling $3,614.84 should be DENIED;

2. Defendant be directed to verify, **within twenty-one days of an Order adopting this Report and Recommendations**, whether or not Plaintiff owes a pre-existing debt to the United States subject to offset. If no such pre-existing debt exists, Defendant be ordered to pay the EAJA award directly to Plaintiff's counsel; and,

3. The case remains terminated on the docket of this Court.

May 21, 2012                                                 s/Sharon L. Ovington
                                                                           Sharon L. Ovington
                                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).